IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Francis Harper,<br>                 Plaintiff,<br><br>vs.<br><br>Andrew Saul,<br>Commissioner of the Social Security<br>Administration,<br>                 Defendant. | Civil Action No. 4:19-cv-01535-CMC<br><br><br><br>**OPINION AND ORDER** |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claims under the Social Security Act for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the court for review of the Report and Recommendation ("the Report") of Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(b)(2)(a) and 83.VII.02, *et seq*., D.S.C.

In the Report, filed July 1, 2020, the Magistrate Judge recommends the decision of the Commissioner be affirmed. ECF No. 16. On July 15, 2020, Plaintiff filed objections to the Report, objecting to: (1) the Magistrate Judge's conclusion the ALJ adequately accounted for Plaintiff's fibromyalgia in determining her RFC; and (2) the Magistrate Judge's conclusion the weight given by the ALJ to the medical opinion of Dr. Lary Korn, D.O. (Dr. Korn), a consultative examiner, is supported by substantial evidence. ECF No. 17. On May 13, 2020, the Commissioner filed a

response to these objections. ECF No. 18. For the reasons stated below, the court adopts the Report and affirms the decision of the Commissioner.

## **Standard**

Section 636(b)(1)(B) of the Federal Magistrates Act allows this court to refer a pending matter to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge's recommendation is afforded no "presumptive weight," which necessarily leaves the "authority and the responsibility [of] mak[ing] an informed, final determination" with this court. *Mathews v. Weber,* 423 U.S. 261, 271 (1976).

Within fourteen days after being served with the Magistrate Judge's report and recommendation, any party may object to the Report.[1] 28 U.S.C. § 636(b)(1). If a timely objection is filed, the court must make a *de novo* determination of those portions of the recommendation to which an objection is made. *Id.* After conducting this *de novo* review, the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *Id.* In the absence of an objection, the court may accept the recommendation of the Magistrate Judge provided a review of the record reveals no clear error.[2] *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005).

---

[1] A party's objection must be made with "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir 2007).

[2] When a party receives notice of the consequences of failing to comply with the timely objection filing requirement, the failure to file a timely objection results in waiver of that objection in the

Here, the court is authorized to review the Commissioner's denial of benefits under 42 U.S.C. §§ 405(g), 1383(c)(3). *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001). Such review neither involves a trial *de novo*, *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971), nor a *de novo* review of the evidence, *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir. 1986). Rather, the court's review is "narrow," *Smith*, 795 F.2d at 345, and is limited to whether the Commissioner's factual findings are supported by substantial evidence and whether the Commissioner applied the correct legal standards, *Walls v. Barnhart,* 296 F.3d 287, 290 (4th Cir. 2002).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *T-Mobile South, LLC v. Roswell,* 135 S. Ct. 808, 815 (2015)). In applying the substantial evidence standard, the "court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (alteration marks in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "evidentiary sufficiency" necessary to meet this standard is "not high." *Id.* "Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater,* 99 F.3d 635, 638 (4th Cir. 1996). "It means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek,* 139 S. Ct. at 1154 (quoting *Consolidated Edison Co.*, 305 U.S. at 229).

---

court of appeals. *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315-16 (4th Cir. 2005); *Wells v. Shriners Hosp.,* 109 F.3d 198, 201 (4th Cir. 1997); *Wright v. Collins,* 766 F.2d 841, 845-46 (4th Cir. 1985).

3

Although considerable deference is afforded to the Commissioner's factfinding, the court does not "mechanically accept[]" his findings. *Flack v. Cohen,* 413 F.2d 278, 279 (4th Cir. 1969). Rather, the "statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id.* Indeed, "courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek,* 438 F.2d at 1157-58. Along a similar vein, to meaningfully perform substantial evidence review, the record must set forth the basis for the Commissioner's decision. *Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir. 2013). The Commissioner's decision "should include a discussion of which evidence the [the Commissioner] found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Id.*

## Background

*1) Administrative Procedural History.*

Plaintiff applied for DIB and SSI on June 22, 2015, alleging a disability onset date of June 7, 2014, due to fibromyalgia, vitamin deficiency, anxiety, anemia, rheumatoid arthritis, spinal stenosis, bipolar disorder, and low blood sugar.[3] R. at 12, 110. Plaintiff's claims were denied initially and upon reconsideration. R. at 12. On January 26, 2018, a hearing was held before an Administrative Law Judge ("the ALJ"), during which Plaintiff and a vocational expert testified. R. at 44-87. On June 7, 2018, the ALJ issued a decision denying Plaintiff both DIB and SSI

---

[3] Citations to the Administrative Record are denoted by "R."

benefits. Plaintiff sought review of the ALJ's decision before the Appeals Council, which was denied on April 15, 2019, making the ALJ's decision the Commissioner's final decision. R. at 1-3, 9-32. Plaintiff filed the present action on May 28, 2019. ECF No. 1.

*2) DIB and SSI Program Eligibility.*

The Social Security Act provides disability benefits under two programs, generally known as DIB and SSI. Of relevance to the present case, DIB provides "disability benefits to insured individuals irrespective of financial need," while SSI provides supplemental security income benefits "to financially needy individuals who are . . . disabled regardless of their insured status." *Bowen v. Galbreath,* 485 U.S. 74, 75 (1988). *See also* 42 U.S.C. §§ 401 *et seq. (DIB);* 1381 *et seq. (SSI).* For purposes of both programs, an individual qualifies as "disabled" if such individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). *See also id.* § 382c(a)(3)(A) (materially same definition for purposes of SSI). Furthermore, under both programs,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exits in significant numbers either in the regions where such individual lives or in several regions of the country.

5

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B). Given the uniformity of the statutory definition of disability under both programs, the regulations governing the two programs, unsurprisingly, are equivalent. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (recognizing statutory definition of "disability" under DIB and SSI programs are same and governing regulations parallel). Accordingly, the court considers case law developed under both programs as interchangeable. *Burns v. Barnhart,* 312 F.3d 113, 119 n.1 (3d Cir. 2002) (considering case law developed under DIB and SSI programs as interchangeable).

In determining whether a claimant is disabled, the Commissioner uses a five-step, sequential evaluation process, 20 C.F.R. §§ 404.1520(a)(4) (five-steps for DIB), 416.920(a)(4) (five-steps for SSI), with the claimant bearing the burden of proof at Steps 1 through 4 and the Commissioner bearing the burden of proof at Step 5. *Lewis v. Berryhill,* 858 F.3d 858, 861 (4th Cir. 2017). At Step 1, the Commissioner considers whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the inquiry stops, and the claimant is deemed not disabled. *Id.* If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step 2 and considers the medical severity of the claimant's impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe physical or mental impairment or combination of impairments of sufficient duration, there is no further inquiry and the claimant is

deemed not disabled.[4]  *Id.*  If the claimant does have a severe impairment or combination of impairments of sufficient duration, the Commissioner proceeds to Step 3 and determines whether such impairment or combination of impairments meets or equals one of the impairments listed in 20 C.F.R. § 404, Appendix 1.[5]  *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer at Step 3 is yes, the claimant is disabled and further inquiry ceases.  *Id.*  If the answer at Step 3 is no, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to Step 4.[6]  *Id.* §§ 404.1520(a)(4), 416.920(a)(4).  At Step 4, the Commissioner determines whether the claimant can perform her past relevant work ("PRW") in light of her RFC.[7]  *Id.* §§ 404.1520 (a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can perform her PRW, the claimant

---

[4] An impairment is "severe" if it "significantly limits" a claimant's "physical or mental ability to do basic work activities . . . ."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities include, *inter alia*, "[p]hysical functions such as such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  *Id.* §§ 404.1521(b)(1), 416.921(b)(1).  To meet the durational requirement, the impairment must last or be expected to last a continuous period of at least twelve months.  *Id.* §§ 404.1509, 416.909.

[5] The SSA Regulations include an extensive list of impairments ("Listed Impairments") which are considered disabling without the need to assess whether there are any jobs a claimant could perform.  The Listed Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are considered severe enough to prevent all gainful activity.  *Id.* §§ 404.1525(a), 416.920(a)(4)(iii).  To meet or equal one of the Listed Impairments, the claimant must establish her impairments match several specific criteria, *id.* § 404.1525(c)-(e), or be "at least equal in severity and duration to [those] criteria of any listed impairment," *id.* § 404.1526(a).

[6] RFC is "the most" the claimant "can still do despite" physical and mental limitations affecting her ability to work.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[7] PWR is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).

7

is deemed not disabled and the inquiry ends. *Id.* If the claimant cannot perform her PRW, the Commissioner at Step 5 determines whether she can perform other work found in the national economy commensurate with her age, education, experience, and RFC. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the Commissioner customarily offers as evidence the testimony of a vocational expert responding to a hypothetical question incorporating the claimant's limitations. *Lewis*, 858 F.3d at 862. If the Commissioner meets his burden at Step 5, the claimant will be found not disabled and the application for benefits will be denied. *Id.*

3*) Plaintiff's Testimony.*

Of relevance to the issues on appeal, the Report accurately recounts Plaintiff's testimony at the ALJ hearing as follows:

> Plaintiff testified her back, neck, shoulders, and knee had very severe pain. Plaintiff is stiff in the morning and is awakened in the night with severe leg muscle spasms. [R. at 51]. Plaintiff testified her hands go to sleep all the time. [R. at 52-53]. Plaintiff reported her fingers and wrist just do not work and are not as strong. [R. at 53]. Plaintiff testified she had arthritis in her hands and fingers. Plaintiff reported she gets anxiety attacks if she has to do something on a computer because she does not know anything about it. [R. at 54]. Plaintiff cannot use her hands to cook like she had in the past. [R. at 55]. When shopping, Plaintiff has a lot of problems with her back and knees hurting. [R. at 56]. Plaintiff can stand/walk for 15 minutes. [R. at 57]. After an hour trip at one time, Plaintiff would need to sit down. [R. at 58]. Plaintiff testified she was extremely careful how much she walked because if she walked a lot she gets bone marrow edema on her knee that is extremely painful. [R. at 59]. Plaintiff reported panic attacks 2-3 times a week. [R. at 60]. Plaintiff testified about bipolar depressive episodes. [R. at 62-63]. Once every couple of months, she is on a bipolar high where she feels like she can do anything and then does things she should not do. [R. at 65]. One such episode was almost signing up for online school for $26,000. [R. at 66]. Plaintiff testified she stopped using marijuana a month prior to the hearing. [R. at 70]. In the prior three years, Plaintiff had performed some chores. [R. at 71-73]. Plaintiff goes fishing a few times a year. [R. at 73]. Plaintiff attends church, does a bible study and helps with teaching children at church. [R. at 74]. It appears church activities were

> Monday, Wednesday, Friday, and Sunday. [R. at 74-75]. Plaintiff would take her older two grandchildren to the park, shopping, or to church. [R. at 76]. They would sometimes spend the night. Plaintiff does her housework in increments with sitting in between. [R. at 77-78]. Plaintiff reported after taking medications her pain levels were: 3 for back, 4-5 for neck, 0 for left knee, and 7 for right knee. [R. at 79-80]. Plaintiff did not mention fibromyalgia, fatigue, or being tired during her testimony.

ECF No. 16 at 2-3. Plaintiff further testified she could stand and walk around no more than a total of two or three hours in an eight-hour period. R. at 58-59. At the time of the hearing, Plaintiff was forty-eight years old. R. at 49.

4) *The ALJ's Decision.*

With respect to the first three steps of the five-step sequential evaluation process required to determine whether an individual is disabled under the DIB program, 20 C.F.R. § 404.1520(a)(4), or the SSI program, *id.* § 416.920(a)(4), the ALJ determined: (1) Plaintiff has not engaged in substantial gainful activity since June 7, 2014; (2) Plaintiff has the following severe impairments—lumbar and cervical degenerative disc disease, left and right knee impairment/degenerative joint disease, fibromyalgia/myofascial pain, depression, bipolar disorder, anxiety, and panic disorder; and (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 15-16. Before going to step four, the ALJ determined Plaintiff

> **has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except pushing and pulling with the lower extremities would be occasional. She could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. She is limited to frequent overhead reaching bilaterally. The claimant should avoid concentrated exposure to hazards. She is able to perform simple,**

9

> **one-two step tasks, and simple repetitive tasks; essentially unskilled work with a Specific Vocational Preparation (SVP) level 1 or 2. This work could be performed on a sustained basis, 8 hours a day, 5 days a week, in 2-hour increments with normal breaks for an 8-hour workday.**

R. at 18.[8]

Applying this RFC at step four, the ALJ determined Plaintiff is unable to perform her past relevant work as a surgical technician. R. at 30-31. Moving on to step five, the ALJ found Plaintiff not to be disabled based upon the ALJ's conclusion that considering Plaintiff's age, education, work experience, and her RFC she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 32. In reaching this conclusion, the ALJ relied upon the uncontradicted testimony of the vocational expert that a person with Plaintiff's RFC would be able to perform the requirements of representative occupations such as office helper, with approximately 125,000 jobs in the national economy; ticket seller, with

---

[8] The applicable regulations for DIB and SSI identically define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

approximately 125,000 jobs in the national economy; and shipping and receiving weigher, with approximately 150,000 jobs in the national economy. *Id.*

## Discussion

In the Report, the Magistrate Judge recommends affirming the Commissioner's decision as supported by substantial evidence. ECF No. 16. Plaintiff raises two objections to the Report. ECF No. 17. Although both objections ultimately challenge the ALJ's RFC finding, the first objection focuses on Plaintiff's fibromyalgia and the second focuses on the medical opinion evidence of Dr. Korn. The Commissioner has replied, ECF No. 18, and now the court addresses Plaintiff's two objections to the Report in turn.

*1) Evaluation of the Effects of Plaintiff's Fibromyalgia Pain in Determining her RFC.*

In Plaintiff's first objection to the Report, she objects to the Magistrate Judge's conclusion the ALJ adequately accounted for Plaintiff's fibromyalgia pain in determining her RFC. According to Plaintiff, the ALJ erroneously required objective evidence of her fibromyalgia pain and failed to account for the waxing and waning nature of fibromyalgia. Plaintiff's objection is without merit.

Notably, the SSA has issued specific guidance regarding the evaluation of fibromyalgia in disability claims. Such guidance is found in Social Security Ruling 12-2p ("SSR 12-2p"), Titles II and XVI: Evaluation of Fibromyalgia, 77 Fed. Reg. 43640 (July 25, 2012). SSR 12-2p defines fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Id.* at 43641. SSR 12-2p goes on to recognize "the symptoms and signs of [fibromyalgia] may vary in

11

severity over time and may even be absent on some days." *Id.* at 43643. Moreover, SSR 12-2p notes symptoms of fibromyalgia, such as widespread pain or fatigue, "may result in exertional limitations that prevent a person from doing the full range of unskilled work" and fibromyalgia claimants "may also have nonexertional physical or mental limitations because of their pain or other symptoms," as well as nonexertional environmental restrictions. *Id.* at 43644. Consistent with this guidance, many courts have recognized objective tests cannot conclusively confirm the presence of fibromyalgia. *See, e.g.*, *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (observing growing number of courts, including Second Circuit, recognize no objective tests can conclusively confirm fibromyalgia).

In determining the RFC of a claimant like Plaintiff who has been determined to suffer from fibromyalgia as a severe impairment, SSR 12-2p provides as follows:

> We base our RFC assessment on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are "not severe." For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have "bad days and good days."

77 Fed. Reg. at 43644. This guidance makes clear the ALJ's consideration of the claimant's longitudinal record is key to the proper determination of a claimant's RFC when the claimant has fibromyalgia.

Here, at Step 2, the ALJ determined Plaintiff's fibromyalgia significantly limits her ability to do basic work activities and can be expected to last a continuous period of at least twelve months. R. at 15. Working from this premise, the ALJ properly considered all relevant evidence

12

in the record in evaluating whether the effects of Plaintiff's fibromyalgia in combination with the effects of all of her medically determinable impairments render her incapable of any gainful activity for a period of at least twelve months. 77 Fed. Reg. at 43644. Indeed, as the Magistrate Judge accurately concluded, the ALJ's decision is clear the ALJ considered the longitudinal record of Plaintiff's fibromyalgia symptoms as required by SSR 12-2p, did not exclusively rely on an absence of objective medical evidence to evaluate Plaintiff's fibromyalgia, and expressly discussed both abnormal and normal findings, refraining from cherry picking the record. *See Robinson v. Comm'r of Soc. Security Admin.,* 2018 WL 6190434, at *3 (D.S.C. Nov. 28, 2018) (Childs, J.) (finding no error where ALJ considered objective medical evidence when assessing fibromyalgia, but also considered plaintiff's subjective view).

A full and fair reading of the ALJ's decision leads this court to the firm conclusion the ALJ did not improperly require or elevate objective evidence of the effects of Plaintiff's fibromyalgia over subjective evidence and did not fail to account for the waxing and waning nature of fibromyalgia. The ALJ extensively discussed and considered physical examination findings from Plaintiff's various medical sources showing Plaintiff's gait, range of motion, and strength normal at times and abnormal at other times. R. at 27-28. The ALJ recognized Plaintiff had periods of loss of strength and pain with range of motion, Plaintiff's range of motion improved with treatment, more recent examinations showed normal gait and/or independent ambulation, and recent muscle strength testing results were normal, with one treating source, a neurologist, having previously noted Plaintiff's "poor effort" during such tests and "[e]mbellishment" on exam. R. at 27. In explicit recognition of the waxing and waning of Plaintiff's symptoms, the ALJ limited

13

Plaintiff to light work, to occasional pushing and pulling with her lower extremities, to occasional postural activities, and to only frequent overhead reaching bilaterally. R. at 27-28 (acknowledging Plaintiff had "periods of loss of strength and pain with range of motion" and setting forth limitations "given the inconsistencies with exam findings"). *See also* R. at 27 ("She has fibromyalgia, which was considered when determining the claimant's exertional and postural capacities."). Additionally, the ALJ found Plaintiff "should avoid concentrated exposure to hazards due to her painful range of motion and other fibromyalgia/myofascial pains." R. at 28. Indeed, the ALJ's assessment is fully consistent with 12-2p's directive that "[a]s with any claim for disability benefits, before we find that a person with [the medically determinable impairment of fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." 77 Fed. Reg. at 43641. As just set forth, the record establishes the ALJ acted properly in his role as fact finder in considering the effects of Plaintiff's fibromyalgia in formulating her RFC, and therefore, the court upholds the ALJ's assessment of the effects of Plaintiff's fibromyalgia in formulating her RFC as supported by substantial evidence.

In sum, the court agrees with the Magistrate Judge's conclusion the ALJ adequately accounted for Plaintiff's fibromyalgia pain in determining her RFC, rejects Plaintiff's first objection as without merit, and adopts the Report on this issue.

*2) Assessment of Dr. Korn's Medical Opinion.*

Plaintiff next objects to the Magistrate Judge's conclusion substantial evidence supports the ALJ's assessment of Dr. Korn's medical opinion. Plaintiff's objection is without merit.

Dr. Korn is a primary care physician who performed a one-time consultative exam on Plaintiff on September 21, 2015. The ALJ assigned limited weight to Dr. Korn's consultative examining opinion as follows:

> Dr. Korn, an examining source, opined on September 21, 2015, that the claimant has "a lot of physical complaints that I think seemed to conspire against her and make it difficult for her to tolerate physical activities." (Exhibit B6F/5-6). Dr. Korn stated that, based on the claimant's report, the total effect of her low back, left hip, right knee, and ankles keeps her from weightbearing more than 30 to 60 minutes at a time. He opined that the claimant is significantly limited in her ability to do lifting from the floor level with proper technique, and that she is unable to do a full crouch or squat. Dr. Korn further opined that the claimant is unable to ambulate on rough or uneven terrain, or climb safely or effectively. He stated that she would need to maintain her activities to floor level and that she would require breaks to get off her feet periodically through the day. Dr. Korn stated that the claimant's right shoulder limits her ability to perform vigorous overhead manipulations, but that he could not comment specifically on any limitations below the shoulder involving the right upper extremity due to the lack of usable objective findings beyond the mild degenerative joint disease in the fingers. The undersigned accords limited weight to this opinion. The opinion was based on a one-time examination of the claimant, and it is not consistent with more recent examinations noting generally normal gait, motor strength and improved range of motion (*e.g.*, Exhibits B20F/60; B26F/5-6; B28F). Additionally, Dr. Korn described the claimant's functional capabilities with vague terminology, such as "significantly limited," "periodically," and "vigorous." These descriptions do not assist with determining the application of limitations within an 8-hour workday.

R. at 29-30. Notably, Dr. Korn indicated Plaintiff "did not have excessive pain displays during the evaluation though she discussed pain and emphasized her pain to an extreme during the history." R. at 446.

15

Plaintiff contends the ALJ gave three flawed reasons for rejecting Dr. Korn's opinion, requiring remand to allow the ALJ to properly evaluate the opinion. First, Plaintiff argues the ALJ erred in discounting Dr. Korn's opinion on the basis he only examined her once, considering the ALJ assigned great weight to the opinion of psychologist Dr. Ron Thompson, PhD, another one-time examiner of Plaintiff. Second, Plaintiff argues the ALJ failed to acknowledge the waxing and waning nature of fibromyalgia when he discounted Dr. Korn's opinion for being inconsistent with more recent examinations noting generally normal gait, motor strength, and improved range of motion. Finally, Plaintiff alleges because the ALJ found Dr. Korn's description of Plaintiff's functional capabilities vague, the ALJ erred by failing to contact Dr. Korn for clarification of his vague terminology. The court addresses each of these arguments in turn.

The Report properly concludes Plaintiff's first argument is without merit because, while a limited examining relationship alone may not be a sufficient reason to discount an opinion, it is a factor to consider in connection with other reasons, 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2), as the ALJ did here in giving limited weight to Dr. Korn's opinion, R. at 30. The fact the ALJ gave greater weight to Dr. Thompson's one-time consultative examiner's opinion is explained by the fact the ALJ found such opinion consistent with the record while he found Dr. Korn's inconsistent.

The Report correctly rejects Plaintiff's second argument regarding the waxing and waning nature of the symptoms of fibromyalgia as inconsistent with SSR 12-2p's directive that "[a]s with any claim for disability benefits, before we find that a person with [the medically determinable impairment of fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to

16

support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." 77 Fed. Reg. at 43641. As the Report aptly reasons, "[w]hile [fibromyalgia] is not diagnosed based off of strength, gait, and range of motion exams, such objective evidence pursuant to SSR 12-2p is to be considered in determining claimant's functional abilities and/or limitations." ECF No. 16 at 26-27.

Turning to Plaintiff's third argument the ALJ should have contacted Dr. Korn for clarification of his vague language regarding the Plaintiff's functional capabilities, the Report rejects such argument on the ground,

> [u]nder 20 U.S.C. § 404.1520b, the ALJ is only required to seek additional evidence or clarification if the ALJ cannot reach a conclusion about whether the claimant is disabled. Here, the ALJ did not have to recontact Dr. Korn or any other physician for additional information or clarification because the ALJ had sufficient information to determine the issue of disability in the record before him. The record was fully developed and sufficient for the ALJ to render a disability opinion.

ECF No. 16 at 27. In response, Plaintiff does not address the Report's citation of and reliance on 20 U.S.C. § 404.1520b, but instead "[r]espectfully" complains "the Magistrate Judge does not address the case law [she] provided showing that this type of finding warrants remand." ECF No. 17 at 6. Plaintiff then asserts "[t]his is especially so where the ALJ's other errors warrant remand." *Id.*

Plaintiff's entire line of argument here is without merit. First, Plaintiff neither cited nor discussed any case law in the section of her opening brief arguing the ALJ should have contacted Dr. Korn to clarify his use of vague language regarding her functional capabilities. Rather, Plaintiff only cited 20 C.F.R. § 404.1512(e) (2008) for the proposition "if the ALJ was uncertain

17

of the meaning of Dr. Korn's opinion, he had the ability to recontact the doctor for clarification[.]" ECF No. 11 at 32.  Second, the Magistrate Judge properly recognizes that when the ALJ issued his decision 20 C.F.R. § 404.1520b, applicable to DIB claims, and its counterpart 20 C.F.R. § 416.920b, applicable to SSI claims, were in effect, not 20 C.F.R. § 404.1512(e).[9]  The Magistrate Judge also correctly recognizes that, under the effective regulations, an ALJ is only required to seek additional evidence or clarification if the ALJ cannot reach a conclusion about whether the claimant is disabled based upon the evidence in the case record.  20 C.F.R. §§ 416.920b(b), 1520b(b).  Here, as the Magistrate Judge reasons, because the ALJ had sufficient information in the record to determine the issue of Plaintiff's disability, he was not required to recontact Dr. Korn. ECF No. 16 at 27.

In sum, the court agrees with the Magistrate Judge's conclusion in the Report substantial evidence supports the ALJ's assessment of Dr. Korn's medical opinion, rejects Plaintiff's second objection as without merit, and adopts the Report on this issue**.**

---

[9] Effective March 26, 2012, § 404.1520b replaced § 404.1512(e).  *See Bentley v. Colvin*, 2015 WL 5836029 (N.D. Tex. Sept. 30, 2015) (recognizing same and holding when ALJ issued decision on June 20, 2012, §404.1520b and its counterpart § 416.920b were in effect).

18

**Conclusion**

For the reasons set forth above, the court adopts the Report and affirms the decision of the Commissioner.

IT IS SO ORDERED.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
October 14, 2020